JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Susan Stein
5 Bryce Lane
Newtown, PA 18940

**(b)** County of Residence of First Listed Plaintiff   Bucks County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Maurice R. Mitts, Esq., Ross G. Currie, Esq.
Mitts Law, 1822 Spruce St., Philadelphia, PA 19103, (215) 866-0110

## DEFENDANTS

Neil W. Matheson et al.
545 I Ave.
Coronado, CA 92118

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☐ 2  U.S. Government
  Defendant
- ☐ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☒ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Breach of contract, breach of fiduciary duty, tortious interference, dissolution of LLC

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
2,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
12/10/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| SUSAN STEIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NEIL W. MATHESON et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                    (XX)

| | | |
|---|---|---|
| 12/10/2019 | Maurice R. Mitts, Esq. | Plaintiff Susan Stein |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-866-0110 | 215-866-0111 | mmitts@mittslaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 5 Bryce Lane, Newtown, PA 18940 _____

Address of Defendant: _____ 545 I Ave., Coronado, CA 92118 _____

Place of Accident, Incident or Transaction: _____ Pennsylvania _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/09/2019          _____          50297
                          *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Maurice R. Mitts, Esq. _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 12/10/2019          _____          50297
                          *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUSAN STEIN<br>5 Bryce Lane<br>Newtown, PA 18940,<br><br>                    Plaintiff,<br><br>     v.<br><br>NEIL W. MATHESON<br>545 I Ave.<br>Coronado, CA 92118,<br><br>FRANK GALELLA<br>19 North Ridge Road<br>Denville, NJ 07834,<br><br>ERIC SCHRAMM<br>8383 Kern Crescent<br>San Diego, CA 92127,<br><br>and<br><br>E4 HEALTH GROUP, LLC f/k/a KIWI<br>HEALTHCARE CONSULTING LLC<br>c/o Neil W. Matheson<br>545 I Ave.<br>Coronado, CA 92118,<br><br>                    Defendants. | No. _____ |

## COMPLAINT

Plaintiff Susan Stein ("Ms. Stein" or "Plaintiff"), by and through her undersigned

counsel, brings this Complaint against Defendants Neil W. Matheson ("Defendant Matheson"),

Frank Galella ("Defendant Galella"), Eric Schramm ("Defendant Schramm"), and E4 Health

Group, LLC f/k/a Kiwi Healthcare Consulting LLC ("E4," and together with Defendants

Matheson, Galella, and Schramm, "Defendants") to recover money damages for the wrongful

and fraudulent conduct of the aforementioned Defendants, and in support of her claims in this action, avers as follows:

## Preliminary Statement

1.      This action arises from Defendants' fraudulent inducement of Ms. Stein to enter into a partnership and employment relationship with them so they could trade upon her reputation and goodwill, leverage—and then usurp—her client relationships in the health care industry, deny her the agreed-upon benefits of their relationships, including, but not limited to, her equity stake in E4 and her compensation for her services to Defendants.

## Parties

2.      Ms. Stein is an adult individual and citizen of Pennsylvania, residing at 5 Bryce Lane, Newtown, PA 18940.

3.      Defendant Matheson is an adult individual and, upon information and belief, is a citizen of California, residing at 545 I Ave., Coronado, CA 92118.

4.      Defendant Galella is an adult individual and, upon information and belief, is a citizen of New Jersey, residing at 19 North Ridge Road, Denville, NJ 07834.

5.      Defendant Schramm is an adult individual and, upon information and belief, is a citizen of California, residing at 8383 Kern Crescent, San Diego, CA 92127.

6.      Defendant E4 is, upon information and belief, a California limited liability company with its principal place of business at 19 North Ridge Road, Denville, NJ 07834, a mailing address at P.O. Box 196, Morris Plains, NJ 07950.

7.      Upon information and belief, Defendants Matheson, Galella, and Schramm are the only members of Defendant E4.

8.      Upon information and belief, no member of E4 is a citizen of Pennsylvania.

**Jurisdiction and Venue**

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties to this action are of diverse citizenship and the amount in controversy herein exceeds $75,000.00.

10.      This Court has personal jurisdiction over Defendants in this action as the claims set forth herein arise from Defendants' contacts with, and acts and omissions in Pennsylvania, and the effects of Defendants contacts, acts, and/or omissions on Plaintiff in Pennsylvania.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3).

**Facts**

12.      From approximately early 2000 until August 2018, Ms. Stein was the principal of Connexion Healthcare ("Connexion"), a company which provides scientific and promotional communications to pharmaceutical and biotech companies.

13.      In her nearly two decades running Connexion, Ms. Stein built considerable goodwill in the healthcare community, especially, but not exclusively, in connection with pharmaceutical and other forms of products and treatments in the space of oncology and rare diseases.

14.      In or about February 2018, Defendant Matheson contacted Ms. Stein and expressed an interest in merging his own company with Connexion.

15.      Upon information and belief, at the time of this initial contact, Defendant Matheson was the principal and sole member of Kiwi Healthcare Consulting LLC. ("Kiwi Healthcare").

16.     The discussions and negotiations regarding the potential merger between Connexion and Kiwi Healthcare contemplated that Defendant Matheson and Ms. Stein would be 50/50 partners or co-owners of the merged enterprise.

17.     In or about April 2018, Defendant Matheson requested that Ms. Stein and her husband, Robert Stein, who served as General Counsel and Chief Operating Officer of Connexion, meet with Defendant Galella.

18.     Defendant Matheson introduced the Steins to Defendant Galella as a friend of his who was consulting him on financial issues relating to the proposed merger.

19.     Over the following several months, the Ms. Stein had several more meetings with Defendants Matheson and Galella regarding the proposed merger and to discuss other companies which the proposed merged company might acquire.

20.     In the course of all meetings and discussions as alleged above, Defendants Matheson and Galella represented to Ms. Stein that she would have a 50% equity stake in the merged company, including as that company might grow through the acquisition of other companies.

21.     During this informal diligence and negotiation period, Ms. Stein provided Defendants Matheson and Galella with access to Connexion's financial records and other proprietary and trade secret information, including budget and forecast, client list, accounts payable and accounts receivable information.

22.     Defendant Matheson desired and recommended that the merged company utilize Connexion's pre-existing employer identification number and infrastructure in order to retain Connexion's pre-existing clients without entering into new Master Service Agreements or other contracts.

23.     In effect, the merged company would carry on Connexion's business, utilizing Connexion's platform, under a new name.

24.     The discussions between Ms. Stein and Defendants Matheson and Galella, and the success of the proposed merged company, turned on Defendant Galella's ability to leverage his banking relationships to secure an operating line of credit to service Connexion's existing clients and an expanded client roster based upon future acquisitions.

25.     Despite the 50/50 ownership structure of the new company that had been discussed between Ms. Stein and Defendants Matheson and Galella, on or about May 17, 2018, Defendant Matheson circulated an email which indicated that Ms. Stein would own only 32.5% of the merged company, Defendant Matheson would own 32.5%, Defendant Galella 25%, and 10% would be reserved for a B-class of equity holders.

26.     Following review of Connexion's financial records, Defendant Galella determined that a merger between Kiwi Healthcare and Connexion would not be possible due to "financial issues," and specifically Connexion's accrued pension obligations.

27.     Ms. Stein and Robert Stein personally satisfied Connexion's pension obligations, rendering the stated "financial issues" moot as an obstacle to a proposed merger.

28.     Nonetheless, Kiwi Healthcare did not complete a formal merger with Connexion.

29.     However, Kiwi Healthcare and Connexion entered into a *de facto* merger by, among other things, Kiwi Healthcare officially changing its name to E4 Health Group, LLC (i.e., Defendant E4), migrating Connexion's clients to E4, and utilizing Connexion employees for Kiwi Healthcare/E4 business and projects.

30.     Unbeknownst to Ms. Stein, as the diligence and *de facto* merger were occurring, upon information and belief, Defendants Matheson, Galella, and Schramm conspired to reduce, and ultimately zero out, Ms. Stein's equity interest in E4.

31.     On or about August 13, 2018, Defendant E4 issued to Ms. Stein an offer letter (the "Offer Letter," a true and correct copy of which is attached hereto as **Exhibit A**) to become a partner in E4.

32.     Per the terms of the Offer Letter, Ms. Stein was to have the title of Partner in E4, and "[would] not report to anyone as [she] will be a partner in the business and member of the Board of Directors."

33.     Further per the terms of the Offer Letter, "[a]ny decisions concerning [Ms. Stein's] role, remuneration, incentives, and shareholding will be made together with [Defendants Matheson and Galella]."

34.     In her role as Partner, Ms. Stein was to be "[r]esponsible for the success of E4 … including new business development, client service, hiring great talent, resources to deliver above and beyond expectation, full P&L responsibility, helping to establish the culture of the company, team work, and the success of all parts of the group as we establish and grow them."

35.     The Offer Letter provides that Ms. Stein's initial compensation was to be $225,000.00 per year, to be reviewed and adjusted every six months based on E4's performance, "with the goal of having [Ms. Stein] reach a market rate salary as soon as possible."

36.     The Offer Letter also provides for Ms. Stein to be eligible for an incentive plan "that will pay [her] up to 100% of [her] salary based on exceeding revenue and profit performance objectives."

37.     Ms. Stein was also to "receive distributions from [her] capital account … based on [her] share of the profits/loss of the company."

38.     Defendant Matheson, for himself and/or on behalf of Defendant E4, represented in the Offer Letter that life insurance and disability insurance would be made available as soon as appropriate policies could be obtained, and that a 401k program would commence prior to the beginning of 2019, with E4 matching employee contributions up to 3% of salary.

39.     The Offer Letter contemplated that Ms. Stein would also eventually "receive additional benefits such as a car allowance to cover lease, insurance and service costs."

40.     As to Ms. Stein's equity, despite previous discussions regarding Ms. Stein holding a 50% equity interest in the new venture—i.e., E4—the Offer Letter provides that Ms. Stein would own only a 5% membership interest in E4, which would increase to merely 10% when the company achieved $1,000,000.00 in fee revenue, and increased again to an unspecified amount based on undetermined "performance criteria."

41.     The Offer Letter further provides that an operating for E4 was being finalized, and that Ms. Stein would "have an opportunity to review it and provide comments prior to the final execution version being signed."

42.     Notwithstanding the material discrepancies between the terms of the Offer Letter and the agreed-upon terms under which Ms. Stein would serve as a Partner of Defendant E4, Ms. Stein began working in good faith with Defendants as a Partner of E4.

43.     After assuming her role as Partner with E4, Ms. Stein learned, for the first time, that Defendant Schramm was also a Partner.

44.     The terms of Defendant Schramm's partnership in E4, including the extent of his equity interest, were never disclosed to Ms. Stein, despite repeated requests to Defendants for the same.

45.     Despite Connexion's *de facto* merger into Kiwi Healthcare/E4, for the months of September and October 2018, Connexion extended health insurance coverage for its employees to provide seamless coverage until E4 could implement its own health insurance plan for the legacy employees.

46.     Despite the representation and requirement of the Offer Letter that Ms. Stein would be provided with an operating agreement for E4 and be afforded the opportunity to provide comments on it before execution, at no time up to and including the present has Ms. Stein been provided with the operating agreement for E4.

47.     At no time up to and including the present has Ms. Stein been provided with membership certificates or other evidence of her membership interest in E4.

48.     Despite Ms. Stein's role as Partner with E4, during her tenure with E4, at least three employees were hired without Ms. Stein's knowledge, input, or approval.

49.     Despite Ms. Stein having "full P&L responsibility" per the terms of the Offer Letter, at no time was Ms. Stein given access to E4's profit and loss statement to fulfill such responsibility.

50.     Despite Ms. Stein's compensation being specified in the Offer Letter as $225,000.00, subject to adjustment at six-month intervals, Ms. Stein's salary was not adjusted in late February 2019, but remained as $225,000.00 throughout her tenure.

51.     Despite Ms. Stein being eligible for an incentive plan per the terms of the Offer Letter, no incentive plan was implemented at any time during her tenure.

8

52.     Ms. Stein, through Connexion, brought approximately $1,250,000.00 in revenue to the *de facto* merged company, E4, in late 2018.

53.     Ms. Stein's originations represent the majority of E4's revenue for calendar year 2019.

54.     On numerous occasions, Ms. Stein requested access to E4's profit & loss and other accounting records as both required by the terms of the Offer Letter and necessary for Ms. Stein to effectively perform her role at E4.

55.     E4, however, ignored or denied Ms. Stein's requests.

56.     By way of example, in approximately mid-June 2019, Ms. Stein discussed with Defendant Matheson Defendants' failure to fulfill the terms of the Offer Letter as alleged above, terms which were not only obligations of Defendants to Ms. Stein, but in the best interest of E4 as an enterprise.

57.     On June 21, 2019, at 8:10 a.m. Eastern time, Ms. Stein sent an email (a true and correct copy of which is attached hereto as **Exhibit B**) to Defendant Matheson memorializing the issues raised in their earlier discussion, as follows, in relevant part:

> As we approach our first full year of working together, there are some items that still need to be addressed in the original employment agreement. Attached is my contract with highlighted areas that require attention and discussion.
>
> 1.  Full P&L Responsibility: While I am supposed to have responsibility, I have not yet seen the P&L.
> 2.  Salary Review: My base salary started at $225,000 with a review to be held 6 months upon my start date of August 20, 2018 or February 20, 2019. Will there be a formal review?
> 3.  Incentive Plan: To date, there is no incentive/bonus plan in place. As discussed with Neil, I can create a 2019 plan for review. I will get a draft to you as soon as possible.
> 4.  Equity/Partnership Agreement: I have been told there is not Partnership Agreement for the company. Will there be one drafted in 2019?
>
> All the best,
> Susan

9

58.     Later the same day, June 21, 2019, Defendants issued a termination letter (the "Termination Letter," a true and correct copy of which is attached hereto as **Exhibit C**), purporting to provide 90 days' notice of termination of Ms. Stein's employment with E4.

59.     Specifically, the Termination Letter states:

> Consistent with your letter of employment dated August 13, 2018, we are hereby giving you 90 days notice of termination of your employment with E4 Health Group, LLC. Your final day will be September 19, 2019.

60.     With respect to termination, the Offer Letter provides:

> During the first 6 months of this contract either party may terminate the agreement by giving fourteen (14) days written notice. Should you [sic] employment be terminated within the initial 6 month period you will retain ownership of any clients you bring to E4 Health.

> Following this initial 6-month period this employment contract can be terminated by either party by giving ninety (90) days written notice. At that time ownership of all clients will remain with E4 Health, Group, LLC.

61.     In their acts and omissions described above, Defendants effectively perpetrated a scheme to deceive Ms. Stein, stonewall her repeated and reasonable requests for information to which she was entitled, take advantage of her good-faith performance of her duties, and trade upon Ms. Stein's client relationships—and then, nearly as soon as Defendants possibly could, and as soon as Ms. Stein demonstrated an unambiguous intention to formalize her rights as a Partner per the terms of the Offer Letter, Defendants terminated their employment relationship with Ms. Stein and have wrongfully claimed Ms. Stein's clients as Defendants' own.

62.     Despite the purported termination of Ms. Stein's employment relationship with E4, Ms. Stein was and remains a member of E4, and has been subject to the oppression of the majority members, including Defendants Matheson, Galella, and Schramm.

## **Count I – Breach of Contract**

63.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if set forth fully herein.

64.     Ms. Stein was party to a contractual relationship with Defendants, including, but not limited to, with Defendant E4 by way of the Offer Letter, and with Defendants Matheson, Galella, and Schramm by way of her partnership in E4.

65.     Defendants breached their contractual obligations to Ms. Stein, including, but not limited to, by: (a) failing to issue to Ms. Stein her agreed-upon equity interest in E4; (b) failing to adjust her compensation after six months based upon E4's performance as agreed upon; (c) failing to develop and implement an incentive program for Ms. Stein in E4; (d) denying Ms. Stein access to the financial records necessary and appropriate for her to carry out her role of Partner in E4; (e) denying her access to information about the respective equity interests of Defendants Matheson, Galella, and Schramm in E4; (f) making employment decisions without Ms. Stein's knowledge, let alone input or approval; and (g) wrongfully terminating Ms. Stein as an Partner and/or employee of E4 despite Defendants' numerous breaches of their contractual obligations to Ms. Stein, which breaches denied them the right to terminate Ms. Stein.

66.     Ms. Stein has been damaged by Defendants' breaches of their contractual obligations, including, but not limited to, through lost income and income potential, the benefit of additional compensation (e.g., increased compensation after six months, additional compensation through an incentive program, distributions) to which Ms. Stein was entitled in her contractual relationship with Defendants, and the loss of revenue stream from clients which Ms. Stein brought to E4 but whom E4 retained following Defendants' wrongful termination of Ms. Stein.

67.     Upon information and belief, Ms. Stein's total damages exceed $2,000,000.00, taking into account lost present and future base salary, raises, bonuses, and Ms. Stein's equity interest in E4.

**Count II – Breach of Fiduciary Duty**

68.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if set forth fully herein.

69.     Defendants Matheson, Galella, and Schramm had a fiduciary duty to Ms. Stein by virtue of their relationship as co-members and/or partners with Ms. Stein in E4, and especially in light of their *de facto* combined controlling interest in E4 which they could, and did, use to oppress Ms. Stein and deprive Ms. Stein of her rights as a member E4 as more specifically alleged above.

70.     Ms. Stein has been damaged by Defendants' breaches of their fiduciary duties, including, but not limited to, by being deprived of the economic rights and benefits of membership (e.g., distributions, economic buy-out of her membership interest upon termination).

71.     Defendants' breaches of their fiduciary duties to Ms. Stein are sufficiently wanton, egregious, and/or malicious to warrant the imposition of punitive damages, as evidenced by Defendants' wrongfully not only depriving Ms. Stein of her rights and benefits as a member of E4, but through wrongfully usurping Ms. Stein's own clients and other relations for their own benefit.

**Count III – Tortious Interference with Contract and/or Economic Relations**

72.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if set forth fully herein.

73.     Defendants have tortiously interfered with Ms. Stein's contractual and/or economic relations by, among other things, usurping her client contacts and keeping such client relationships for themselves following their wrongful termination of Ms. Stein.

74.     Defendants' tortious interference with Ms. Stein's contractual and/or economic relations is sufficiently wanton, egregious, and/or malicious to warrant the imposition of punitive damages.

## Count IV – Dissolution of Limited Liability Company

75.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if set forth fully herein.

76.     Both Pennsylvania (in which Ms. Stein is situated) and California (the state of organization of E4) law authorize the dissolution of a limited liability company based upon the fraud, mismanagement, or abuse of authority by the controlling members of the limited liability company. *See* Cal. Corp. Code § 17707.03(a), (b)(5); 15 Pa. C.S. § 8871(a)(4).

77.     Defendants' conduct as alleged herein is sufficiently wrongful and oppressive for the Court to order the dissolution and winding up of E4.

WHEREFORE, Plaintiff Susan Stein respectfully requests that this Honorable Court enter judgment in her favor and against Defendants Neil W. Matheson, Frank Galella, Eric Schramm, and E4 Health Group, LLC f/k/a Kiwi Healthcare Consulting LLC, and award all available relief for the claims set forth herein, including:

    (1)    Actual compensatory damages, in an amount to be determined at trial but hereby alleged to be in excess of $150,000.00;

    (2)    Punitive damages;

    (3)    Dissolution of E4 Health Group, LLC; and

    (4)    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues triable to a jury.

Respectfully submitted,

Date: December 10, 2019

MAURICE R. MITTS, ESQ.
PA I.D. # 50297
ROSS G. CURRIE, ESQ.
PA I.D. # 206085
**MITTS LAW, LLC**
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0110 phone / (215) 866-0111 fax
mmitts@mittslaw.com
rcurrie@mittslaw.com

*Attorneys for Plaintiff Susan Stein*

14

# Exhibit A



August 13th, 2018

Susan Stein
1010 N Hancock St,
Philadelphia, PA 19123

By Email

**STRICTLY PERSONAL AND CONFIDENTIAL**

Dear Susan:

It has been a pleasure getting to know you and appreciate your experience and expertise from a more 'close up' perspective.  Frank and I are very excited that you have decided to become a partner in E4 Health and we know that you will contribute greatly to our long-term success.  We also know that together we will be able to build an amazing business that will be revered as an innovative leader in health & wellness communications.

As we have discussed here are the details of the position:

| | |
|---|---|
| Title: | Partner, E4 Health Group, LLC (CEO E4 Evidence/E4 Education) |
| Reporting to: | You will not report to anyone as you will be a partner in the business and member of the Board of Directors. Any decisions concerning your role, remuneration, incentives, and shareholding will be made together with Frank and me. |
| Board of Directors: | You will be a member of the E4 Health Group, LLC Board of Directors and a member of the E4 Health Executive Management Team which will consist of key executives from across the business.  You will be a contributor to the success of the whole company and work with all of the members of the Executive Management team to build the business and win all pitches across the broad group. |
| Responsibilities: | Responsible for the success of E4 Health Group, LLC including new business development, client service, hiring great talent, resources to deliver above and beyond expectation, full P&L responsibility, helping to establish the culture of the company, team work, and the success of all parts of the group as we establish and grow them. |

**Salary:** Your salary will initially be $225,000 per annum and **it** will be reviewed every 6 months based on the performance of the company with the goal of having you reach a market rate salary as soon as possible.

Salary will be paid on the 15th and 30th days of each month (that is 24 times per year).  Payments will be made by direct deposit into your bank account.

**Termination:** During the first 6 months of this contract either party may terminate the agreement by giving fourteen (14) days written notice.  Should you employment be terminated within the initial 6 month period you will retain ownership of any clients you bring to E4 Health.

Following this initial 6-month period this employment contract can be terminated by either party by giving ninety (90) days written notice.  At that time ownership of all clients will remain with E4 Health Group, LLC.

E4 Health Group, LLC shall be entitled to terminate this employment agreement and to discharge you for "**cause**" effective upon the giving of written notice to you.  The term "cause" shall include the following grounds:

1.  your failure or refusal to materially perform the duties and responsibilities as set forth in the paragraph above, or your failure to devote all of your business time and attention exclusively to the business and affairs of E4 Health Group, LLC unless cured to the reasonably satisfaction of E4 Health Group, LLC within 10 days after written notice thereof to you by E4 Health Group, LLC;

2.  the misappropriation of the funds or property of E4 Health Group, LLC, or any acts of dishonesty affecting E4 Health Group, LLC;

3.  the use of alcohol or illegal drugs, interfering with the performance of your obligations under this Agreement, continuing after written warning;

4.  the indictment for or the conviction in a court of law of, or entering a plea of guilty or no contest to, any felony or any crime involving moral turpitude, dishonesty or theft;

5.  the material nonconformance with E4 Health Group's standard business practices and policies, including without limitation, policies against racial or sexual discrimination or harassment;

6. the commission by you of any act which injures or could reasonably be expected to injure the reputation, business or business relationships of E4 Health Group, LLC.

7. any material breach (not covered by any of the clauses 1 through 6 above) of any term, provision or condition of this Agreement, if such breach, is susceptible of cure, is not cured to the reasonable satisfaction of the E4 Health Group, LLC within 10 days after written notice thereof to you by E4 Health Group, LLC.

Any notice required to be given by E4 Health Group, LLC pursuant to clauses 1 - 6 above shall specify the specific nature of the claimed breach and the manner in which E4 Health Group, LLC requires such breach to be cured (if curable).

Restrictions:    You agree to devote all of your business time to E4 Health Group, LLC and not to engage in any competitive activity during the term of your employment. You also agree that for a period of one year (12 months) after the termination of your employment you will not (1) directly or indirectly hire or solicit to hire any person who was an employee of E4 Health Group, LLC or its affiliates at the same time you were and (2) not directly or indirectly solicit or service the business of any E4 Health Group, LLC client (defined as a brand or product—not the company that manufactures that brand/product).

Incentive Plan:    We will implement and incentive plan for you that will pay you up to 100% of your salary based on exceeding revenue and profit performance objectives. We will agree revenue and profit performance targets versus the budget for each year.

The bonus plan will pay you a percentage of the bonus pool (100% of your salary at the start of the calendar/financial year) based on your performance against the targets. For example you would receive 10% for making the base target and then from 10-100% of the bonus pool for exceeding the targets by certain amounts.

As you will own a membership interest in the company you will receive distributions from your capital account which is based on your share of the profits/loss of the company. Such distributions may be made to meet your tax obligations on a quarterly basis provided the company has the cash to make such distributions.

| | |
|---|---|
| **Benefits:** | You will be eligible for the E4 Health Group, LLC healthcare, dental, and vision care plans. Life insurance and disability insurance will be made available as soon as we can obtain a policy. |

We will also start a 401K plan prior to that start of 2019 and the company will match employee contributions up to 3% of salary.

You will be provided with a company cell phone or if you prefer you may use your own cell phone and expense the costs through the company expense claim process. You may also claim internet connectivity through the expense claim process.

As the company becomes more financially viable you will receive additional benefits such as a car allowance to cover lease, insurance and service costs.

**Paid Time Off (PTO):** We will not implement a formal PTO program. Instead you will eligible to take as much vacation and personal time as you wish provided it is in agreement with the Board. The only restriction will be that you cannot take more than two full weeks (10 working days) at one time unless approved by the Board.

**Equity:** You will initially own 5% of the membership interests in E4 Health Group, LLC. This equity position will increase to 10% when the company achieves $1M in fee revenue. Your shareholding will be increased again once certain performance criteria have been met—these criteria will be mutually agreed between us.

The E4 Health Group, LLC Operating Agreement will detail the way in which your equity stake in the business may he transferred and/or sold. It will also detail the process for retaining or liquidating your membership interest when your employment is terminated.

You will able to retain your ownership should the company terminate your employment for any reason other than cause. If you voluntarily terminate your employment or the company terminates you for cause you will relinquish your ownership interest in E4 Health Group, LLC and the company will pay you only the balance of your Capital Account.

It is likely that your shares will be sold as part of a change of ownership of E4 Health Group, LLC.

**Start Date:** Your official first day will be Monday, August 20th, 2018.

Location:          You will work from home for the initial startup period and we will
                   determine the eventual location of our office as we build the business.

We are finalizing the E4 Health Operating Agreement and we will ensure that you have an
opportunity to review it and provide comments prior to the final execution version being
signed.

I am really looking forward to getting started and to celebrating our success many times over
the next few years.

Please sign a copy of this letter indicating your agreement with its contents and return it when
you can get to a scanner.

Thanks and best wishes,

Neil

Neil Matheson
Partner, E4 Health Group, LLC

I agree to the terms outlined in this letter of employment:

_____          Date: _____
Susan Stein

# Exhibit B

From: Susan Stein
Sent: Friday, June 21, 2019 8:10 AM
To: Neil Matheson <neil@e4healthgroup.com>
Subject: FW: Emailing: SCS--Letter of Employment 8-20-18 FINAL

Hi Neil -

Perhaps we can get to some of this today. If not, we can set up some time at your convenience.

As we are approach our first full year of working together, there are some items that still need to be addressed in the original employment agreement.   Attached is my contract with highlighted areas that require attention and discussion.

1.  Full P&L Responsibility:  While I am supposed to have responsibility, I have not yet seen the P&L.
2.  Salary Review:  My base salary started at $225,000 with a review to be held 6 months upon my start date of August 20, 2018 or February 20, 2019.  Will there be a formal review?
3.  Incentive Plan:  To date, there is no incentive/bonus plan in place.  As discussed with Neil, I can create a 2019 plan for review. I will get a draft to you as soon as possible.
4.  Equity/Partnership Agreement: I have been told there is no Partnership Agreement for the company.  Will there be one drafted in 2019?


All the best,
Susan


--
**Susan Stein, MPH**
**215.499.1231**

# Exhibit C

June 21, 2019

Susan Stein
5 Bryce Lane
Newtown, PA 18940

### STRICTLY PERSONAL AND CONFIDENTIAL

Dear Susan:

Consistent with your letter of employment dated August 13, 2018, we are hereby giving you 90 days notice of termination of your employment with E4 Health Group, LLC. Your final day will be September 19, 2019.

You will continue to be paid your salary and receive healthcare benefits provided you continue to work through to September 19, 2019 which will be your termination date. If you find employment before September 19, 2019, the day you stop working for E4 will be your termination date and your salary and healthcare benefits will stop on that day. You are eligible for COBRA and will receive a letter from Insperity detailing all pertinent information regarding your healthcare benefits.

You will be required to return all company provided equipment which consists of an HP Elite Book Laptop, your E4 American Express Card and the key to the Regus office no later than your last day of employment.

Please immediately submit any outstanding expense claims along with the necessary documentation and receipts. Any preapproved business-related expenses that you may be required to incur from the date of this notice through your final day will be reimbursed on receipt of an expense claim and accompanying receipts.

Frank, Insperity and I are all available for any questions you may have or for any assistance you may need that will facilitate your transition.

Regards,

Neil Matheson
Partner, E4 Health