IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN STEIN,<br><br>    Plaintiff,<br><br>    v.<br><br>NEIL W. MATHESON, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 19-5814-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                                  August 17, 2022

      Plaintiff Susan Stein brings claims for breach of contract, breach of fiduciary duty, tortious interference with contract and/or economic relations, and dissolution of limited liability company against her former employer, Defendant E4 Health Group, LLC. (Doc. No. 1.) She also brings claims for breach of fiduciary duty and tortious interference against two of E4's principals, Defendants Neil Matheson and Frank Galella. (*Id*.) Defendants have moved for summary judgment on all claims. (Doc. No. 66.)

### I.

      Viewing the evidence in the light most favorable to Stein, the relevant facts are as follows.

      In February 2018, Matheson contacted Stein because he was interested in merging his medical communications company, Kiwi Healthcare Consulting LLC, with her pharmaceutical and biotech communications company, Connexion Healthcare. (Doc. No. 67 at ¶¶ 6–7; Doc. No. 71-1, Ex. A.) Over the next few months, Stein met with Matheson and Galella—Matheson's financial consultant and later, partner—to discuss the potential merger. (Doc. No. 67 at ¶ 7; Doc.

No. 69, Ex. C at 72:6–15.) In July 2018, after months of negotiation, Galella reviewed Connexion's accounts and found what he considered significant financial red flags. (Doc. No. 67 at ¶¶ 9–10; *see also* Doc. No. 71-1, Ex. B (Galella emailing Matheson a list of his financial concerns and stating "Best to just light a match to the place and start over").) As a result, he told Matheson that he believed they should walk away from any merger. (Doc. No. 66-3, Ex. K at ¶ 8; Doc. No. 71-1, Ex. E at 59:20–60:24; Doc. No. 71-1 Ex. F.) Although the parties dispute whether a merger ultimately occurred, there is no real dispute that the structure of the conversations changed in July or August 2018.

According to the business records filed with the State of California, on July 18, 2018, Matheson officially changed the name of his company from Kiwi Healthcare to E4 Health Group, LLC, and when the company began operating, he brought Galella on as a member. (*See* Galella Depo. at 45:23–46:4.) About a month later, on August 13, 2018, E4 offered Stein a position at E4. (Doc. No. 69, Ex. D.) The offer letter provided that Stein would "be a partner in the business and member of the Board of Directors." (*Id.*) The letter gave her a 5% membership interest in E4, which would increase to 10% when the company achieved $1 million in fee revenue, with possible additional increases based on "performance criteria." (*Id.*) The letter also stated that Matheson and Galella were finalizing an operating agreement for E4 and that Stein would "have an opportunity to review and provide comments" before the final version was signed. (*Id.*) Stein accepted and signed the offer letter on August 21. (Doc. No. 69, Ex. E at ¶ 16.)

From the beginning of Stein's tenure with E4, the parties had difficulties working together, and E4 ultimately terminated Stein's employment on June 21, 2019—less than a year after her start date. (*Id.* at ¶ 47; Doc. No. 67 at ¶ 51.) Because the termination was not for cause,

the terms of the offer letter provide that Stein retains her equity interest in the company.  (*See* Doc. No. 69 at ¶ 23; *id.*, Ex. D.)

## II.

Stein filed her Initial Complaint in December 2019 (Doc. No. 1), and Defendants moved for partial dismissal (Doc. No. 10).  During briefing on that motion, the Court asked the parties to address whether it had subject matter jurisdiction over the case:

> Specifically, the Court is concerned about the citizenship of Defendant E4 Health Group, LLC.  As an unincorporated association, E4 is a citizen of every state where its members are citizens.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (holding that "the citizenship of an LLC" for diversity jurisdiction purposes "is determined by the citizenship of each of its members").  In the jurisdictional section of her complaint, Plaintiff alleges that Defendants Matheson, Galella, and [Eric] Schramm[1] are the "only members of Defendant E4," that they are citizens of California and New Jersey, and that "no member of E4 is a citizen of Pennsylvania." (Doc. No. 1 at ¶¶ 3–8.)  However, Plaintiff contradicts this assertion later in the complaint when she alleges that she "remains a member of E4."  (*Id.* at ¶ 62; *see also* Doc. No. 17-1 at p. 5 (stating in the offer letter that Stein "will able [sic] to retain [her] ownership [in E4] should the company terminate [her] employment for any reason other than cause").)  Because Plaintiff is a citizen of Pennsylvania, if she remains a member of E4, then E4 is also a citizen of Pennsylvania, and there is no complete diversity.  *See DPCC, Inc. v. Cedar Fair, L.P.*, 21 F. Supp. 2d 488, 490 (E.D. Pa. 1998) ("Plaintiffs DPCC and PCC are limited partners of defendant Cedar Fair, L.P.; therefore, there can be no diversity jurisdiction over this action.").

(Doc. No. 36 at p. 1 n.1.)

In their jurisdictional brief, Defendants argued that the Court lacks subject matter jurisdiction because, per the terms of the parties' contract, Stein became a member of E4 in August 2018 and she remains a member to this day.  (*See generally* Doc. No. 38.)  Stein

---

[1] Despite Stein's initial allegations to the contrary, the parties seem to agree that Schramm has never been a member of E4.  (*See* Doc. No. 67 at ¶ 2; Doc. No. 69 at ¶ 14.)

3

countered that although she should have been made a member per the terms of the offer letter, that membership was never memorialized in an operating agreement, regulatory documents, or tax filings.  (*See generally* Doc. No. 37.)  Considering the evidence before the Court at the time and the company's publicly available regulatory documents, the Court was compelled to agree with Stein.  (Doc. No. 39 at p. 6.)  Although "E4 agreed to give Stein a membership interest in the company," there were no facts before us to "suggest[ ] that E4 followed through on that promise."  (*Id.*)  Importantly, it was "not clear that Galella, who all parties agree is a member of E4, consented to Stein's membership," a prerequisite under California law.  (*Id.*)

Defendants now move for summary judgment and ask the Court to reconsider the jurisdictional issue in light of the full record.  (Doc. No. 66-2 at p. 6.)  They argue that when Stein joined E4, all parties, including Stein, believed she owned a 5% interest in the company and consented to her membership.  (*Id.* at p. 7.)  Stein disagrees, and relying on the Court's prior opinion, argues that her membership was never formalized because she is not identified in E4's regulatory or tax documents.  (Doc. No. 69 at p. 2 ¶ 2; *id.* at pp. 20–21.)

**III.**

"A challenge to subject matter jurisdiction may be raised at any point prior to entry of final judgment."  *Boyle v. United States*, __ F. Supp. 3d __, 2022 WL 1773670, at *2 n.1 (E.D. Pa. June 1, 2022).  Indeed, under the Federal Rules of Civil Procedure, "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action."  Fed. R. Civ. P. 12(h)(3) (emphases added).  When the court considers a factual attack to its jurisdiction, it has "substantial authority . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also id.* ("[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *Int'l Ass'n of Machinists &*

4

*Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 n.16 (3d Cir. 1982) ("That the district court is free to determine facts relevant to its jurisdiction has long been clear."). At all times, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Int'l Ass'n of Machinists*, 673 F.2d at 711 (quoting *Mortensen*, 549 F.2d at 891).

As we have explained before, "[t]o satisfy the jurisdictional requirements of 28 U.S.C. § 1332(a)(1), the federal diversity statute, diversity must be complete; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995). A "natural person is deemed to be a citizen of the state where he is domiciled," and "the citizenship of an LLC" is determined "by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418–20 (3d Cir. 2010). In both cases, the inquiry turns on "the citizenship of the parties at the time the complaint was filed." *Midlantic Nat'l Bank*, 48 F.3d at 696.

Because E4 is a California limited liability company, California's Revised Uniform Limited Liability Company Act governs its formation. That Act outlines four ways that a person can become a member of a previously formed LLC: (1) "As provided in the operating agreement"; (2) As the result of a merger or other transaction effective under Article 10 of the statute; (3) "With the consent of all the members"; or (4) "If, within 90 consecutive days after the limited liability company ceases to have any members, the last person to have been a member, or the legal representative of that person, designates a person to become a member, and the designated person consents to become a member." Cal. Corp. Code § 17704.01(c). "A person may become a member without acquiring a transferable interest and without making or being obligated to make a contribution to the limited liability company." *Id.* § 17704.01(d).

Here, the record shows that in August 2018, E4 consisted of two members, Matheson and

5

Galella.[2]  Unlike at the motion to dismiss stage—when it was unclear whether Galella consented to Stein's membership—now, with the benefit of the full record, it is clear that Galella consented to E4 offering Stein a 5% ownership interest in the company.  Galella attested that, despite his concerns with Connexion, "E4 decided to offer Ms. Stein an employment contract, a salary, 5% membership interest," and other incentives "based on her reputation and apparent enthusiasm as well as a list of purported 'leads.'"  (Doc. No. 66-3 at p. 58 ¶ 15.)  He then attested:  "*We* agreed to hire Susan as an employee," and "*We* offered Ms. Stein an initial 5% equity stake."  (Doc. No. 66-3 at p. 19 ¶ 17 (emphases added); *see also* Doc. No. 69, Ex. D (stating in the offer letter that "*Frank* [Galella] and I are very excited that you have decided to become a partner in E4 Health . . . ." (emphasis added); *cf.* Doc. No. 71-1, Ex. G (email from Matheson to Stein outlining early negotiations and the basis for a new proposal that includes, "Shareholding to be determined").)

Stein does not address this evidence, and instead, notes that she is not identified as a member in E4's regulatory filings, and that she has never received a K-1 tax return as a part-owner of the business.[3]  But those papers do not compel a different conclusion.  Although the Court found the regulatory and tax filings material at the motion to dismiss stage, that was only because the Court lacked any evidence that Galella consented to Stein's membership.  Given the

---

[2] It is unclear when Galella formally joined E4, and in particular, whether he was a member in August 2018 when Stein signed the offer letter.  (*See* Galella Depo. at 45:1–46:4 (stating that his legal relationship with E4 began in August or September of 2018).)  However, we need not resolve this dispute because it makes no difference to our ultimate conclusion.  If Galella was not a member of E4 in August 2018, then Matheson was the company's only member.  There can be no doubt that Matheson—who signed the offer letter—consented to Stein's membership in E4.

[3] Stein also argues that Defendants denied her membership in their Answer to the Complaint.  But this denial is explicitly based on this Court's prior ruling.  (*See* Doc. No. 46, ¶ 69 n.3; *see also id.* at ¶ 62 (denying the allegation that Stein is a member of E4 on the grounds that the allegation "constitute[s an] impertinent conclusion[ ] of law to which no responsive pleading is required").)  Because the Court now reconsiders that ruling, the Court does not view this denial as creating a dispute of fact.

lack of direct evidence, we viewed the regulatory documents and tax returns, which Galella filed, as circumstantial evidence of non-consent.[4] But now, Defendants have provided affirmative evidence that both Matheson and Galella consented to Stein joining E4 as a member, and the filings and tax returns do not contradict that evidence. *See Legacy Ins. Sols. LLC v. ABS Healthcare Servs. LLC*, CV 20-4097 DSF (JEMx), 2020 WL 3790837, at *1 (C.D. Cal. July 7, 2020) ("The Court obviously does not condone attempting to mislead regulators—if that is what happened—but falsehoods on regulatory documents do not somehow negate Beeman's apparent membership in Legacy under California law or create federal subject matter jurisdiction where none exists."). Consent—not recording—is what California law requires. *See* Cal. Corp. Code § 17704.01(c). Therefore, the Court finds that Stein was a member of E4 when she joined the company in August 2018.

All parties agree that Stein was not fired for cause, and therefore, she retained her membership interest after her termination. The California Code outlines the methods by which a member may dissociate from an LLC, such as by giving notice to the company of her "express will to withdraw as a member." Cal. Corp. Code § 17706.02(a); *see also generally id.* § 17706.02(b)–(g), (k), (*l*). Stein has put forth no evidence that she took steps to dissociate from E4 before bringing this lawsuit. Therefore, we find that she remained a member of E4 at the time she brought this case, *see id.* § 17701.02(p) ("'Member' means a person that has become a

---

[4] In his deposition, Galella explains that Stein was not listed as a member in the company's official filings and was not issued a K-1 tax return because the company was operating at a significant loss and running on loans provided by Matheson and Galella. (Gallela Depo. at 92:4–93:9.) Galella testified that E4 did not intend to ask Stein or any future equity-holding employee to fund the company's losses, and therefore, waited to finalize the operating agreement and to identify her in regulatory filings. (*Id.*) Likewise, because Stein had not contributed any capital into the business, she lacked a basis for tax purposes, and Galella saw no reason to issue her a K-1. (*Id.*) As mentioned above, in California, an individual need not make a capital contribution to the limited liability company to become a member. *See* Cal. Corp. Code § 17704.01(d); *see also Legacy Ins. Sols. LLC*, 2020 WL 3790837, at *2 ("[C]apital contributions are explicitly not required for a person to be a member of an LLC under California law.").

member of a limited liability company under Section 17704.01 and has not dissociated under Section 17706.02."), and she and E4 shared citizenship for purposes of diversity, *see Zambelli Fireworks Mfg. Co.*, 592 F.3d at 418–20. Because Stein and E4 were both citizens of Pennsylvania when she filed her initial Complaint, the Court lacks diversity subject matter jurisdiction and is compelled to dismiss the case.

## IV.

This case is dismissed for lack of subject matter jurisdiction. An appropriate order follows.